UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NUMBER:   1:22-CR-43 |
| ) | |
| DAMEAN D. BROWN ) | |
| ) | |
| Defendant. ) | |

### Defendant's Sentencing Memorandum

The Defendant, Damean Brown, (hereinafter, "Damean" or "Brown"), by his attorney, Michelle F. Kraus, and respectfully submits this Sentencing Memorandum.

### Sentence

Mr. Brown agrees that the Presentence Investigation Report, (hereinafter "PSR"), correctly states his total offense level as 21. (PSR ¶ 96). Brown also agrees that his criminal history score is 0 and establishes a criminal history category of I, (PSR ¶ 103), with a guideline range of 37 months to 46 months. (PSR ¶ 127).

**Nature of the Offense**

Brown agrees with the recitation of facts contained in The Offense Conduct in the PSR paragraphs 7-47.

### 18 U.S.C. § 3553(a)

In February, 2022, ATF opened an investigation about Damean Brown after receiving a referral from the Chicago Field Office. During the course of the investigation, ATF made contact with Brown at his home on July 6, 2022. Without an attorney representing him and before he was charged with any criminal offenses, Brown provided a statement to ATF about his purchase

1

of firearms and acknowledged his wrongdoing. He admitted that the address he provided on the 4473 form was not his actual address. (PSR ¶ 49). A few days later, July 11, 2022, he voluntarily went to the ATF office, again without an attorney present, and corrected some of the information he provided about his own criminal conduct. Brown was indicted on July 27, 2022. His acceptance of responsibility occurred prior to the filing of the Indictment.

Prior to this offense, Brown's only contact with the criminal justice system was as a juvenile. At 14 he was charged with Resisting Law Enforcement. He was eventually sentenced for that case on December 17, 2013 and was required to serve 90 days at the juvenile center. At the age of 15, he was charged twice in juvenile court. It appears that he completed a drug/alcohol program, and the cases were resolved without any additional detention. (PSR ¶¶ 106, 108). Brown turned 18 and became an adult in 2015. He has not had any criminal conduct since 2013.

Damean Brown was raised by a single, working mother. She provided the "basic life necessities" for Damean and his siblings. He described the neighborhoods that he grew up in as "volatile, ravaged by drug activity and gang violence." (PSR ¶ 112). His mother attempted to find a safe place to raise her family and moved often. Damean attended a different school every year. He has a strong and supportive relationship with his mother and siblings.

Exhibit A is a video that contains statements from family and friends made on Damean's behalf. There is a clear, consistent perception of Damean by those on the video. Damean is a loving, caring father. His world rotates around his children and his purpose in life is to take care of and support his children. Damean is a hard worker. Debbie Norwalt is a family friend and co-worker. She described Damean as a hard worker who completed his tasks on time and did more

than was expected of him. She also described his as a loving father and someone who would help his family in any way necessary.

A second overarching characteristic described by those on the video is that Damean will absolutely learn from his mistakes. He is described by his family and friends as someone who has only made the same mistake once. They say that he has articulated to them that he understands what he was doing by buying and selling firearms was wrong and illegal and he will not engage in that behavior again. Since his release was revoked and he has been incarcerated, he will miss the birth of his daughter. He has also spoken to his family about how difficult it is for him to be in jail and not be able to be with his kids. He fully understands how the impact of his decisions and his behavior is affecting his family and children. His grandmother, Cathy Helms, said that the hardest part for Damean right now is being away from his children and that he is afraid of how much time he is going to get because he will miss out on so much of his children's lives. She said that Damean knows that he has to accept the consequences of his actions and she believes this will only make Damean stronger and wiser and he will not do anything like this again.

In March 2016, the United States Sentencing Commission published *Recidivism Among Federal Defenders: A Comprehensive Overview*. Part IV of this Report details recidivism findings, including Criminal History Points determination. The report found:

> Fully consistent with its previous recidivism studies, the Commission's present study found that recidivism rates are most closely correlated with total criminal history points. For example, 30.2 percent of offenders with zero total criminal history points were rearrested within eight years, compared to 81.5 percent of offenders with more than 10 total criminal history points. (See Page 18, available at: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf ).

Not surprisingly, those offenders with zero criminal history points, like Damean, are much less likely to recidivate, even among those with one (1) or two (2) criminal history points, recidivism rises by nearly 17 and 26 percent. Damean does not qualify for the amendment to the guidelines for zero point offenders (§ 4C1.1) because of the nature of his charges. Nonetheless, the comments contained in its Reason for Amendment", apply to Damean. The Commission said:

> In establishing new §4C1.1, the Commission was informed by its studies of recidivism among federal offenders, as well as other extensive data analyses of offenders with no criminal history points, and public comment. The Sentencing Table in Chapter Five, Part A is divided into six criminal history categories, from I (lowest) to VI (highest). Criminal History Category I includes offenders with zero criminal history points and those with one criminal history point. Recidivism data analyzed by the Commission shows, however, that offenders with zero criminal history points have considerably lower recidivism rates than other offenders, including offenders with one criminal history point. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Among other findings, the report concluded that "zero-point offenders" were less likely to be rearrested than "one point" offenders (26.8% compared to 42.3%), the largest variation of any comparison of offenders within the same Criminal History Category.

## Conclusion

An analysis of Section 3553(a) factors in this case reflects that a sentence equal to or below the minimum of the advisory guideline range would be appropriate. The sentence would reflect the seriousness of the offense and would provide just punishment to Damean Brown for his criminal conduct. As a zero criminal history point offender, statistically, he is at much lower risk of reoffending. His family and friends, those who love him and know him the best, say that Damean has learned from his mistakes in the past and he already understands how his criminal behavior is negatively impacting his family, most importantly his children.

Respectfully Submitted,

Northern District of Indiana Federal

4

Federal Community Defenders, Inc.

By: s/ Michelle F. Kraus
Michelle F. Kraus
200 E. Main Street, Suite 905
Fort Wayne, Indiana 46802
Phone: (260) 422-9940
Michelle_Kraus@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that, on 11/9/2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all parties of record.

s/ Michelle F. Kraus